UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

**DERRICK WILSON,**

                **Plaintiff,**

      v.                                                              5:01-CV-1597
                                                                                     (FJS/DEP)

**NELSON AQUINO, same being a Police Officer
in the employ of the City of Syracuse Police Department,
in his individual and official capacity;
RALPH BOWERING, same being a Police Officer
in the employ of the City of Syracuse Police Department,
in his individual and official capacity;
MICHAEL EMOND, same being a Police Officer
in the employ of the City of Syracuse Police Department,
in his individual and official capacity; and
BRIAN LENDY, same being a Police Officer
in the employ of the City of Syracuse Police Department,
in his individual and official capacity,**

                **Defendants.**
_____

**APPEARANCES**                                      **OF COUNSEL**

**OFFICE OF ANTHONY C. OFODILE**        **ANTHONY C. OFODILE, ESQ.**
498 Atlantic Avenue
Brooklyn, New York 11217
Attorneys for Plaintiff

**CITY OF SYRACUSE**                     **MARY ANNE DOHERTY, ESQ.**
**OFFICE OF CORPORATION COUNSEL**     **NANCY JEAN LARSON, ESQ.**
233 East Washington Street                 **RAMONA L. RABELER, ESQ.**
Syracuse, New York 13202
Attorneys for Defendants

**OFFICE OF JAMES P. MCGINTY**          **JAMES P. MCGINTY, ESQ.**
217 Montgomery Street, Suite 1200
Syracuse, New York 13202-1925
Attorneys for Michael Emond

**OFFICE OF MICHAEL J. VAVONESE**  MICHAEL J. VAVONESE, ESQ.
407 South Warren Street, Suite 300
Syracuse, New York 13202
Attorneys for Brian Lendy

**OFFICE OF EMIL M. ROSSI**  EMIL M. ROSSI, ESQ.
307 South Townsend Street, Suite 100
Syracuse, New York 13202
Attorneys for Brian Lendy

**SCULLIN, Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Currently before the Court is Plaintiff's motion for judgment as a matter of law, pursuant to Rule 50 of the Federal Rules of Civil Procedure. On September 12, 2005, the Court commenced the trial of this matter, in which Plaintiff alleged that Defendants violated his Fourth Amendment right to be free from false arrest, excessive force, and unlawful searches. At the close of Defendants' case, Plaintiff moved for a judgment as a matter of law pursuant to Rule 50 with respect to, among other things, his claim that Defendants unlawfully strip searched him at the Kennedy Square Apartments.[1]

After entertaining the parties' oral arguments with respect to this issue, the Court

---

[1] As a preliminary matter, the Court notes that, pursuant to Rule 50, a party may move for a judgment as a matter of law at any time before submission of the case to the jury. *See* Fed. R. Civ. P. 50(a)(2); *see also Sealey v. Coughlin*, 997 F. Supp. 316, 319 (N.D.N.Y. 1998) (citing Fed. R. Civ. P. 50(a)(2), (b)) (other citations omitted). Since Plaintiff has met this procedural condition precedent, the Court may consider the merits of his motion. The Court also notes that, although Plaintiff moved for a judgment as a matter of law with regard to his other claims, this decision is limited to Plaintiff's claim that Defendants unlawfully searched him at the Kennedy Square Apartments.

provided them with an opportunity to submit further briefing in support of their respective positions.[2]  Thereafter, on September 19, 2005, the Court met with counsel to hear further argument and at that time ruled that Defendants' strip search of Plaintiff at the Kennedy Square Apartments violated his Fourth Amendment right as a matter of law.  At that conference, the Court also informed the parties that a written decision, setting forth the Court's reasoning for its ruling, would be forthcoming.  The following constitutes the Court's written determination of Plaintiff's motion.

## II. BACKGROUND

On October 28, 1998, at approximately 9:30 p.m,[3] Plaintiff was a front-seat passenger in a

---

[2]  At the close of Defendants' case, Plaintiff directed the Court's attention to *Sarnicola v. County of Westchester*, 229 F. Supp. 2d 259 (S.D.N.Y. 2002), *Bolden v. Vill. of Monticello*, 344 F. Supp. 2d 407 (S.D.N.Y. 2004), and *People v. More*, 97 N.Y.2d 209 (2002), to support his contention that Defendants' strip search of him was unreasonable.  Post-motion submissions indicate that both parties accept the *Sarnicola* proposition that a warrantless strip search of an arrestee absent "particularized reasonable suspicion" is unreasonable under the Fourth Amendment.  *See Sarnicola*, 229 F. Supp. 2d at 270.  Indeed, Defendants argue that, under the totality of the circumstances, they had "particularized probable cause or individualized reasonable suspicion to believe that plaintiff was concealing contraband on his person."  *See* Defendants' Opposition Memorandum at 5.  Both parties have missed the point.  Arguments that go to the issue of whether Defendants had "particularized reasonable suspicion" are only relevant to the extent that there has been a formal custodial arrest of Plaintiff.  Thus, the Court rejects Defendants' argument that probable cause to arrest Plaintiff at the time of the initial stop was sufficient to invoke the search-incident-to-arrest exception to the Fourth Amendment's warrant requirement.

[3]  In his complaint, Plaintiff alleges that the incident occurred at approximately 7:30 p.m.  The testimony of Lois Turner, a security officer at the Kennedy Square Apartments on October 28, 1998, supports this allegation; her log reflects that Defendants entered the complex to strip search Plaintiff at 7:30 p.m.  *See* Turner Tr. at 2.  Defendants, however, testified that the incident occurred at approximately 9:30 p.m.  *See* Lendy Tr. at 153.

motor vehicle belonging to Jackim Grimes, which was traveling in the City of Syracuse.[4] Two of the Defendants, both Syracuse police officers, stopped the vehicle on East Genesee Street. Although Plaintiff alleges that these officers pulled the vehicle over without probable cause, Defendants assert that they stopped the vehicle because they observed Plaintiff engaging in a drug sale. The two officers directed Plaintiff to identify himself and to exit the vehicle. Then, without his consent, the officers patted him down. The officers found no contraband as a result of this frisk, nor did they find any contraband in the car. Defendants then instructed Plaintiff to wait in the vehicle for the K-9 unit and "paddy wagon" to arrive. According to Officer Bowering's testimony, the officers removed Plaintiff from the vehicle again and searched him a second time "and that was a little more thorough search going into his pockets and everything." *See* Bowering Tr. at 42. Sergeant Lendy testified that immediately before the second search the officers handcuffed Plaintiff.[5] *See* Lendy Tr. at 170.

The paddy wagon arrived within "five, ten minutes or so" after the second search. *See* Bowering Tr. at 100. After the K-9 unit arrived, the dog searched the vehicle and demonstrated an interest in the passenger-side seat. The officers then took Plaintiff to the paddy wagon, where they asked him to submit to a strip search. He refused. They then transported Plaintiff, who was already in handcuffs, to the Kennedy Square Apartments. There is conflicting evidence concerning the time that it took Defendants to transport Plaintiff from the location of the initial

---

[4] Since Rule 50 requires that the Court view the evidence in the light most favorable to the non-moving party, the Court will accept as true Defendants' trial testimony for purposes of this motion.

[5] It is not clear which of the two officers actually handcuffed Plaintiff. Both Officer Bowering and Officer Aquino, however, testified that Plaintiff was handcuffed at the scene of his initial seizure. *Compare* Bowering Tr. at 43 *with* Aquino Tr. at 111.

stop to the Kennedy Square Apartments. Officer Aquino testified that it took "[t]wo, [or] three minutes" to get to the Kennedy Square Apartments because it is "[j]ust a few short blocks, four or five blocks" away from the initial stop. *See* Aquino Tr. at 108, 127. According to Sergeant Lendy, however, it took only "a minute" to transport Plaintiff to the apartment complex because "it's only a block and a half away" from the location where Defendants made the initial seizure. *See* Lendy Tr. at 172.

After arriving at the Kennedy Square Apartments, Defendants took Plaintiff into a private office where they strip searched him. Plaintiff did not consent to the search, and Defendants admit that they used force to effectuate the search. Officer Aqunio testified that the strip search lasted "[a]round two or three minutes."[6] *See* Aqunio Tr. at 135. Plaintiff asserts that at least one of the Defendants struck him, knocked him to his knees, and then forcibly removed his pants and underwear to execute a non-consensual cavity search. Plaintiff claims further that one of the Defendants forcibly inserted his finger or other object into Plaintiff's rectum. Defendants deny that they executed a cavity search, placed an object in Plaintiff's rectum, or punched or kicked him. They do concede, however, that there was a struggle and that as a result they had to remove Plaintiff's clothing forcibly. After Defendants executed the strip search, they allowed Plaintiff to leave. As a result of these events, Plaintiff alleges that his thumb was broken, resulting in the need for surgery and the use of orthopedic hardware.

In sum, the uncontroverted trial testimony showed that, after stopping the subject vehicle, Defendants searched Plaintiff three times: twice on East Genesee Street and then a strip search at

---

[6] Ms. Turner, however, testified that Defendants and Plaintiff were in the private room at the Kennedy Square Apartments for "15 [to] 20 minutes." *See* Turner Tr. at 2.

the Kennedy Square Apartments. None of these searches produced drugs, weapons, or any other contraband, and Defendants never formally arrested Plaintiff. Nor did Defendants ever take Plaintiff to the police station or charge him with committing a crime that day.

### III. DISCUSSION

A.   **Standard of Review**

In considering a Rule 50 motion, a court must afford the nonmoving party "'the benefit of all reasonable inferences,'" *Sealey v. Coughlin*, 997 F. Supp. 316, 320 (N.D.N.Y. 1998) (quoting *Weldy, 985* F.2d at 60), and grant the motion only if a claim or a defense "cannot under controlling law be maintained." Fed. R. Civ. P. 50(a)(1). In other words, granting such a motion is warranted "'only when, viewing the evidence most favorably to the [non-moving party], there can be but one conclusion as to the verdict that reasonable men could have reached.'" *Sealey*, 997 F. Supp. at 319 (quoting *Weldy v. Piedmont Airlines, Inc.*, 985 F. 2d 57, 59-60 (2d Cir. 1993)) (other citations omitted).

B.   **Plaintiff's Fourth Amendment Unreasonable Search Claim**

The Fourth Amendment provides all citizens with the "right . . . to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. . . ." U.S. Const. amend. IV. To protect this "fundamental right," the Fourth Amendment requires that a neutral judicial officer issue a warrant before the police conduct a search. *See California v. Carney*, 47 U.S. 386, 390 (1985); *New York v. Belton*, 453 U.S. 454, 457 (1981). Moreover, a

search performed without a warrant is presumptively unreasonable. *See United States v. Miller*, 382 F. Supp. 2d 350, 376 (N.D.N.Y. 2005) (citation omitted). Although there are two well-established exceptions to the warrant requirement, only one of them is relevant here: a search conducted incident to a valid custodial arrest. *See Chimel v. California*, 395 U.S. 752 (1969).[7]

### C.     Search-Incident-to-Arrest Exception to the Fourth Amendment's Warrant Requirement

The search-incident-to-arrest exception to the Fourth Amendment's warrant requirement permits the search of an arrestee and the areas within his immediate control. *See Miller*, 382 F. Supp. 2d at 376 (citing [*Chimel*, 395 U.S.] at 762-63). This exception rests solidly upon the practical necessities of police work: the need to seize weapons that the arrestee could use to assault the arresting officer and the need to prevent the arrestee from destroying evidence or fruits of the crime. *See United States v. Garcia-Sarquiz*, 282 F. Supp. 593, 596 (E.D.N.Y. 1968) (citing *Preston v. United States*, 376 U.S. 364, 367, 84 S. Ct. 881, 883, 11 L. Ed. 2d 777 (1964)). Moreover, this exception applies whether or not the arresting officer's safety is in jeopardy or the evidence is in danger of being destroyed. *See Miller*, 382 F. Supp. 2d at 376 (citation omitted). Nonetheless, this exception does not create a law enforcement free-for-all because "'the scope of [a] search must be strictly tied to and justified by the circumstances which rendered its initiation

---

[7] The second exception to the warrant requirement applies to situations in which the police are faced with exigent circumstances. *See Ker v. California*, 374 U.S. 23, 41-42 (1963). There is no evidence in this case, however, to support a finding that any such exigent circumstances existed at the time Defendants strip searched Plaintiff at the Kennedy Square Apartments, nor did Defendants advance this argument.

permissible.'" *Chimel*, 395 U.S. at 762 (quotation omitted).

### *1. Valid Custodial Arrest*

The first question the Court must answer is whether the search-incident-to-arrest exception applies to the facts of this case. As a threshold matter, the Court notes that it is the arrest itself that triggers the exception. For Fourth Amendment purposes, an arrest is a "'quintessential seizure of the person.'" *Petway v. City of N.Y.*, No. 02-CV-2715, 2005 WL 2137805, *1 (E.D.N.Y. Sept. 2, 2005) (quoting *Posr,* 944 F.2d at 97). In this context, a person is seized if "'in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave,'" even if he was not "formally arrested." *Id.* (quotation omitted).

In this case, the parties do not dispute that, although Defendants never "formally arrested" him, Plaintiff was seized for Fourth Amendment purposes. Defendants stopped the vehicle in which Plaintiff was a passenger, patted him down, instructed him to wait for the K-9 unit, handcuffed him, searched him again, and then forcibly took him to the Kennedy Square Apartments, where they subjected him to a non-consensual strip search. Under these circumstances, a reasonable person in Plaintiff's position would not have believed that he was free to leave; to the contrary, he would have been acting unreasonably if he had attempted to do so. *See, e.g., id.* (a reasonable person would not feel free to leave after being handcuffed for several minutes and struck in the head and face).

Having found a Fourth Amendment arrest, the next issue that the Court must resolve is

whether the search-incident-to-arrest exception applies to an "informal arrest," where, as here, the police seize a person who is not free to leave but never transport him to the police station or charge him with committing a criminal offense.

Although at first glance the question of whether Defendants can rely upon the search-incident-to-arrest exception to justify their strip search of Plaintiff would appear to be a close one, the Supreme Court's unanimous decision in *Knowles v. Iowa*, 525 U.S. 113 (1998), leaves little doubt about the issue. In *Knowles*, an Iowa police officer stopped the defendant for speeding and, although he could have arrested him, he issued a citation instead. After issuing the citation, and while the car was still stopped, the officer searched the vehicle and discovered marijuana and drug paraphernalia. At that point, the police officer arrested the defendant on state drug charges. The Iowa Supreme Court countenanced the officer's conduct, stating that he had conducted a "search incident to citation." The United States Supreme Court, however, disagreed, holding that, although the police officer could have arrested the defendant under Iowa law, the police officer's search of the defendant's car could not be justified as incident to an arrest because the police officer simply issued a citation. *See id.* at 116-17. The Court reasoned that a search without a formal custodial arrest did not comport with the rationale that permits the exception: "(1) the need to disarm the suspect in order to take him into custody, and (2) the need to preserve evidence for later use at trial." *Id.* at 116[8] (citations omitted).

---

[8] The Supreme Court was not the first court to address this issue. As early as 1977, the New York Court of Appeals concluded that the search-incident-to-arrest exception to the Fourth Amendment's warrant requirement only applies where there is an actual custodial arrest prior to, and contemporaneous with, that search. *See People v. Evans*, 43 N.Y.2d 160, 165 (1977) (explaining that "[a]n arrest is an essential requisite to a search incident, otherwise once probable
(continued...)

As noted, there is no dispute that, although Defendants seized Plaintiff within the meaning of the Fourth Amendment, they never formally arrested him or took him into custody.[9] As a result, the Court concludes that, under the rule established in *Knowles*, and previously in other cases, Defendants may not rely upon the search-incident-to-arrest exception to justify their strip search of Plaintiff. *See Knowles*, 525 U.S. at 116-17; *see also Evans*, 43 N.Y.2d at 165; *Timberlake*, 786 F. Supp. at 688-89.

### *2. Contemporaneous Nature of the Search*

Alternatively, even if the Court had found that the search-incident-to-arrest exception

---

[8](...continued)
cause existed a potential arrestee would be fair game for any intrusions the police deem appropriate for however long they allow him to remain at large. . . . [T]he police may not utilize the existence of probable cause as a trump card to justify warrantless personal searches. Unless and until a person is arrested, a full body search without a warrant or exceptional circumstances is constitutionally unreasonable." (internal citations omitted)). The court in *Timberlake v. Benton,* 786 F. Supp. 676 (M.D. Tenn. 1992), reached the same result, reasoning that "[f]ull searches incident to arrest are justified on the basis of a contemporaneous *lawful custodial* arrest." *Id.* at 688 (citations omitted). The court explained further that this "presume[s] that the search was incident to an actual custodial arrest and not merely incident to probable cause to arrest . . . ." *Id.* at 689.

[9] *See also United States v. Kelly*, 267 F. Supp. 2d 5, 12 (D.D.C. 2003) (holding that, although "[a] search incident to an arrest may be performed before the formal act of arresting a person, [it] cannot be incident to arrest if there is no actual arrest. . . .); *United States v. Hawkins*, No. 00-CR-53-BS, 2001 WL 103542, *7 (D. Me. Feb. 6, 2001) (search may be performed immediately prior to arresting someone based on probable cause but the search-incident-to-arrest exception "only applies when 'the *formal arrest* followed quickly on the heels of the challenged search . . . .'" (citation omitted)); *United States v. Dimick*, 790 F. Supp. 1543, 1552 (D. Colo. 1992) (where there is no formal arrest, then "there is no basis, theoretical or practical, for treating [a search] as a search incident to arrest" (citation omitted)); *United States v. Tavolacci*, 704 F. Supp. 246, 251 (D.D.C. 1988) (holding that a search based on probable cause immediately preceding "formal arrest" is incident to arrest (citations omitted)).

applied to Defendants' strip search of Plaintiff, the Court's inquiry would not end there. Rather, the Court would still need to determine whether this search met the exception's other requirements in order to pass constitutional muster.

As previously noted, even if a search is incident to a valid custodial arrest, its scope must "be strictly tied to and justified by the circumstances which rendered its initiation permissible." *Chimel*, 395 U.S. at 762. Moreover, the officer must conduct the search contemporaneously in time and place with the arrest of the accused. *See United States v. Holly*, 219 F. Supp. 2d 117, 126 (D.D.C. 2002). In other words, the search cannot be "'remote in time or place from the arrest.'" *United States v. Chadwick*, 433 U.S. 1, 14 (1977) (quotation omitted). Thus, once a suspect is under arrest and in custody, "'a search made at another place . . . without a warrant, is simply not incident to the arrest.'" *Holly*, 219 F. Supp. 2d at 126 (quoting *Chambers,* 399 U.S. at 47, 90 S. Ct. 1975).

Applying these legal principles to Defendants' strip search of Plaintiff, the Court concludes that this search was not constitutionally permissible. The trial testimony established that Defendants first seized and "patted down" Plaintiff immediately following their initial seizure of Jackim Grimes' car and that this frisk produced no evidence of criminal activity.[10] Subsequently, Defendants testified that they waited for the paddy wagon to arrive (five to ten minutes) and then searched Plaintiff more thoroughly, finding no illicit items.

---

[10] As previously stated, Defendants' testimony establishes that they stopped Jackim Grimes' vehicle at approximately 9:30 p.m. Their testimony further establishes that they waited between five to ten minutes for the paddy wagon to arrive following the initial stop. *See* Bowering Tr. at 100.

Although they did not testify as to how long they waited for the K-9 unit to arrive,[11] the K-9 unit took time to search the subject vehicle before Defendants transported Plaintiff to the Kennedy Square Apartments, which is located between one and a half blocks and four or five blocks from the location where they stopped the vehicle. *Compare* Lendy Tr. at 172 *and* Aquino Tr. at 108. This transport took at least two to three minutes. Then, the actual strip search itself lasted at least "two or three minutes."[12] *See* Aquino Tr. at 135. Therefore, even if the Court views the evidence in the light most favorable to Defendants, at least fifteen minutes elapsed between the time that Defendants initially seized Plaintiff and the time that they strip searched him.

Moreover, Defendants conducted the strip search at a location different from the location where they seized Plaintiff. Defendants transported Plaintiff to the Kennedy Square Apartments, a publicly-funded but privately-maintained housing facility,[13] which is at least a block and a half away, a distance that no reasonable person would consider to be within the immediate vicinity of the seizure. *See Holly*, 219 F. Supp. 2d at 127 (holding that "once the accused [was] under arrest and in custody, then a search made at another place [not within the

---

[11] Police Officer William Foster of the K-9 unit testified that he arrived at the location of the initial stop between 9:30 p.m. and 10:00 p.m. *See* Foster Tr. at 2. Depending on his location in the City of Syracuse, he probably arrived "about 9:45, 9:47, right around there." *Id.*

[12] As previously mentioned, Lois Turner, the Kennedy Square Apartments' security officer, testified that her log indicated that Defendants were in the private room with Plaintiff for fifteen to twenty minutes. *See* Turner Tr. at 2.

[13] It is noteworthy that this location is not a police facility.

suspect's control], without a warrant, is simply not incident to the arrest.'" (quoting *Chambers*, 399 U.S. at 47, 90 S. Ct. 1975)).

Under these circumstances, the Court concludes that the strip search was not contemporaneous with, or in the immediate vicinity of, Defendants' seizure of Plaintiff. *See, e.g., United States v. Jacobs*, No. 00-20074-01-JWL, 2000 WL 1701723, *2 (D. Kan. Nov. 7, 2000) (holding that a lapse of seven minutes before car was searched and significant distance between where defendant was arrested was not substantially contemporaneous with the arrest nor in the immediate vicinity of the arrest (citing, e.g., *United States v. Charles*, No. 00-20022-01-KHV, 2000 WL 575043 at *4 (D. Kan. May 1, 2000) (holding that the search incident to an arrest exception does not apply when the defendant was arrested near his car after being absent from the car for a period of time))).[14]

### D.    Reasonableness of the Strip Search

Finally, even if Defendants' strip search of Plaintiff could meet the other requirements for the search-incident-to-arrest exception to apply, it would nonetheless fail to meet the constitutional standard of reasonableness. Adopting Defendants' trial testimony about what occurred, the strip search's scope was not commensurate with the rationales that except such searches from the Fourth Amendment's warrant requirement. *See Timberlake*, 786 F. Supp. at

---

[14]  *Cf. United States v. Doward*, 41 F.3d 789, 793 n.3 (1st Cir. 1994) (holding that three minute contemporaneous search immediately after the defendant was placed under arrest and completed within *thirty seconds* after he was transported from scene was sufficiently contemporaneous).

689 (quoting [*Cupp v. Murphy*, 412 U.S. 291,] 295-96, 93 S. Ct. at 2003-04, holding that a "search incident to arrest . . . must be limited to the area 'into which an arrestee might reach.'")). This conclusion follows directly from the justification for the exception: the need to seize weapons that could be used to assault the arresting officer and the need to prevent the destruction of evidence or fruits of the crime. *See Garcia-Sarquiz*, 282 F. Supp. at 596 (citation omitted).

Plaintiff was not in a position to threaten Defendants' safety because they had searched Plaintiff once, then handcuffed him, and then searched him again before transporting him to the Kennedy Square Apartments. Defendants testified that they believed that Plaintiff was secreting drugs in his rectum. Assuming *arguendo* that Defendants could establish a reasonable basis for such a belief, the appropriate course of conduct for them to follow would have been to arrest him and transport him to the Justice Center for booking, at which time and place a proper authorized search could have taken place. Therefore, in light of all of the circumstances, the Court concludes that Defendants' strip search of Plaintiff was unreasonable as a matter of law. *See, e.g., Gray v. City of Columbus*, No. IP98-1395-C, 2000 WL 683394, \*10 (S.D. Ind. Jan. 31, 2000)**.**

### IV. CONCLUSION

Accordingly, after carefully reviewing the record in this case, the parties' submissions, and the applicable law, the Court hereby

**ORDERS** that Plaintiff's motion for judgment as a matter of law, pursuant to Rule 50

of the Federal Rules of Civil Procedure, is **GRANTED** with respect to Defendants' strip search of Plaintiff in the Kennedy Square Apartments on October 28, 1998.

**IT IS SO ORDERED.**

**Dated:** October 4, 2005
      Syracuse, New York

                                                  Frederick J. Scullin, Jr.
                                                  Chief United States District Court Judge