**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**DERRICK WILSON,**

                              **Plaintiff,**

              **v.**                                              **5:01-CV-1597**
                                                                  **(FJS/DEP)**
**NELSON AQUINO, same being a Police Officer**
**in the employ of the City of Syracuse Police Department,**
**in his individual and official capacity;**
**RALPH BOWERING, same being a Police Officer**
**in the employ of the City of Syracuse Police Department,**
**in his individual and official capacity;**
**MICHAEL EMOND, same being a Police Officer**
**in the employ of the City of Syracuse Police Department,**
**in his individual and official capacity; and**
**BRIAN LENDY, same being a Police Officer**
**in the employ of the City of Syracuse Police Department,**
**in his individual and official capacity,**

                              **Defendants.**
_____

**APPEARANCES**                                    **OF COUNSEL**

**OFFICE OF ANTHONY C. OFODILE**          **ANTHONY C. OFODILE, ESQ.**
498 Atlantic Avenue
Brooklyn, New York 11217
Attorneys for Plaintiff
_____

**CITY OF SYRACUSE**                          **MARY ANNE DOHERTY, ESQ.**
**OFFICE OF CORPORATION COUNSEL**       **NANCY JEAN LARSON, ESQ.**
233 East Washington Street                  **RAMONA L. RABELER, ESQ.**
Syracuse, New York 13202
Attorneys for Defendants

**OFFICE OF JAMES P. MCGINTY**            **JAMES P. MCGINTY, ESQ.**
217 Montgomery Street, Suite 1200
Syracuse, New York 13202-1925
Attorneys for Michael Emond

**OFFICE OF MICHAEL J. VAVONESE**         **MICHAEL J. VAVONESE, ESQ.**
407 South Warren Street, Suite 300
Syracuse, New York 13202
Attorneys for Brian Lendy

**OFFICE OF EMIL M. ROSSI**               **EMIL M. ROSSI, ESQ.**
307 South Townsend Street, Suite 100
Syracuse, New York 13202
Attorneys for Brian Lendy

**SCULLIN, Chief Judge**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Currently before the Court are Defendants' motion (1) for judgment as a matter of law on the issue of punitive damages or, alternatively, a new trial on that issue, pursuant to Rule 50 and Rule 59 of the Federal Rules of Civil Procedure, respectively; (2) to alter or amend the Court's ruling granting Plaintiff judgment as a matter of law with respect to Defendants' strip search of him in the Kennedy Square Apartments, pursuant to Rule 59 of the Federal Rules of Civil Procedure; (3) for a mistrial, pursuant to Rule 59 of the Federal Rules of Civil Procedure; and (4) to stay the execution of the jury's damages award and the Court's order granting attorney's fees and costs, pursuant to Rule 62 of the Federal Rules of Civil Procedure. Also before the Court is Plaintiff's motion for attorney's fees and costs, pursuant to 42 U.S.C. § 1988.

The following constitutes the Court's written determination of Defendants' and Plaintiff's motions.

## II. BACKGROUND

On September 12, 2005, a five-day jury trial commenced on Plaintiff's claims for false arrest, excessive force, and unreasonable search, arising out of an encounter between Plaintiff and Defendants.  The Court granted judgment as a matter of law to Plaintiff on his claim that Defendants' strip search of him was illegal.  The jury rendered a verdict in favor of Defendants on Plaintiff's claims that they falsely arrested him and used excessive force against him.  The jury awarded Plaintiff nominal damages in the amount of $4 ($1 against each Defendant) and punitive damages in the amount of $25,000,[1] as a result of Defendants' unlawful strip search of him.

The parties are familiar with the facts of this case.  To place Defendants' and Plaintiff's motions in appropriate context, however, a brief account of the events leading up to this litigation is in order.  On October 28, 1998, Plaintiff was a passenger in Jackim Grimes' car when Defendants pulled the car over, ordered Plaintiff out, patted him down, searched him more thoroughly, had a police dog search him, and finally strip searched him in the Kennedy Square Apartments.  Following the strip search, Defendants allowed Plaintiff to leave.  Defendants never formally arrested Plaintiff.   As a result of this encounter, Plaintiff filed this law suit on October 19, 2001.

On September 8, 2005, the Court convened a final pre-trial conference.  At the conference, Defendants moved to exclude Defendant Lendy's suspension record in connection

---

[1]  The jury awarded Plaintiff $5,000 in punitive damages against each of the following Defendants: Defendant Aquino, Defendant Bowering, and Defendant Emond and awarded Plaintiff $10,000 in punitive damages against Defendant Lendy.

with the strip search of Plaintiff.  The Court granted their motion and directed that Plaintiff may not use the suspension as affirmative evidence; however, the Court allowed for the possibility of such evidence being used for impeachment purposes, depending on the circumstances.

During the trial, while Defendant Lendy was testifying, Plaintiff asked him whether he believed that he followed the Syracuse Police Department's rules and regulations in connection with the events at issue, to which he responded that he did.  Plaintiff then questioned Defendant Lendy about his suspension for failure to follow the Syracuse Police Department's rules and regulations, prompting Defendants to move for a mistrial.  The Court denied the motion.

Defendants argue that, because of these facts and others relied upon below, they are entitled to judgment as a mater of law, or a new trial, on the punitive damages question; an amended ruling regarding the Court's holding that Defendants unreasonably strip-searched Plaintiff; a mistrial; and a stay of the jury's damages award and the Court's granting of attorney's fees and costs.

### III. DISCUSSION

**1.      Defendants' Rule 50(b) Motion for Judgment as a Matter of Law or, alternatively, Rule 59 Motion for a New Trial on the Question of Punitive Damages**

Defendants argue that the Court should grant their motion for judgment as a matter of law or, alternatively, grant their motion for a new trial on the punitive damages question because no evidence was put forward at trial to support a punitive damages award.  Specifically, Defendants claim that the evidence adduced at trial did not establish that they acted with evil motive or intent in strip searching Plaintiff.

### *Standards of Review*

Under Rule 50(b), a court may grant a motion for judgment as a matter of law.  *See* Fed.

R. Civ. P. 50(b).  However, the court may grant such a motion only when, viewing the evidence

in the light most favorable to the nonmoving party without considering credibility or weight,

"there can be but one conclusion as to the verdict that reasonable men could have reached."

*Sabir v. Jowett*, 214 F. Supp. 2d 226, 236 (D. Conn. 2002) (quoting *Merrill Lynch Interfunding,*

*Inc.*, 155 F.3d at 120 (other citation omitted)).  Specifically, the Second Circuit held that a court

should grant a judgment as a matter of law only when

> (1) there is such a complete absence of evidence supporting the
> verdict that the jury's findings could only have been the result of
> sheer surmise and conjecture, or
>
> (2) there is such an overwhelming amount of evidence in favor of
> the movant that reasonable and fair minded persons could not
> arrive at a verdict against [it].

*Id.* at 237 (quoting *Galdieri-Ambrosini v. National Realty & Dev. Corp.*, 136 F.3d 276, 289 (2d

Cir. 1998)).

Under Rule 59, a court has discretion to order a new trial.  *See* Fed. R. Civ. P. 59.  A

court should grant a motion for a new trial when it is "'convinced that the jury has reached a

seriously erroneous result or that the verdict is a miscarriage of justice.'"  *Zellner v. Summerlin*,

No. 02 CV 95, 2005 WL 2859993, *7 (E.D.N.Y. Sept. 6, 2005) (quoting *Smith*, 861 F.2d at 370).

Although the court's discretion under Rule 59 is much greater than under Rule 50(b), it should

only order a new trial "if the jury's verdict is egregious."  *Pappas v. New Haven Police Dep't*,

278 F. Supp. 2d 296, 301 (D. Conn. 2003) (citing *DLC Management Corp. v. Town of Hyde*

*Park*, 163 F.3d 124, 133-34 (2d Cir. 1998)).

***Punitive Damages***

In a § 1983 case, the jury may award punitive damages "'when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *Niemann v. Whalen*, 928 F. Supp. 296, 299 (S.D.N.Y. 1996) (quoting *Smith v. Wade*, 461 U.S. 30, 56, 103 S. Ct. 1625, 1640, 75 L. Ed. 2d 632 (1983)).  A court will not disturb a jury's award of punitive damages unless it is "'so high as to shock the judicial conscience and constitute a denial of justice.'" *Lee v. Edwards*, 101 F.3d 805, 808 (2d Cir. 1996) (quotation omitted).

**A.      Defendants' Motion to Set Aside Judgment as a Matter of Law**

Viewed in the light most favorable to Plaintiff, without considering credibility or weight, the evidence adduced at trial demonstrates that, what the jury may have considered from Defendants' testimony alone, to say nothing of Plaintiff's detailed account of the events of that day, provides sufficient evidence to support a punitive damages award.[2]  Defendants' own testimony established that they held Plaintiff for at least fifteen minutes.  Within these fifteen minutes, Defendants patted Plaintiff down, searched him more throughly, had a police dog search him, and finally took him to the Kennedy Square Apartments where they forced him to the ground and strip-searched him.  Plaintiff did not consent to any of these searches.  Defendants found no contraband on Plaintiff's person as a result of these searches.

---

[2]  As noted, the Court held that Defendants strip search of Plaintiff was unlawful.  In reaching this decision, the Court considered only Defendants' testimony.

However, the jury may have also considered Plaintiff's testimony, which detailed a vivid account of lawless conduct.  Plaintiff testified that, when Defendants brought him to the Kennedy Square Apartments in handcuffs to strip search him, they "formed a semi circle around [him]." *See* Wilson Trial Transcript (" Wilson Trial Tr."), at 48.  Thereafter, Defendant Aquino "slapped [Plaintiff] in the back of the head with one hand and then with his other hand punched [him] and [he] fell to the ground." *Id.*  After Plaintiff hit the ground, Defendants "weren't doing anything but kicking [him] and throwing [him] around the room.  There wasn't no search or anything like that, they were beating [him] up, kicking [him] and throwing [him] around the room." *Id.* at 49. According to Plaintiff, this "beating" took place for "about three or four minutes." *Id.*  Plaintiff further testified that, while he was still on the floor, "[Defendant] Lendy [had] his knees in [Plaintiff's] back dripping (sic) [his] thumb and he is twisting [his] thumb, he just kept twisting [Plaintiff's] thumb with his knee in [his] back . . . ." *Id.* at 49-50.  He also testified that one of the Defendants pulled his pants down, and Defendant Aquino slapped him on his buttocks and said "you like this position, don't you, Derrick Wilson, you like this position, and [Plaintiff] was just crying . . . ." *Id.* at 51.  "[Aquino] "inserted his finger in [Plaintiff's] anus and he was like, he doesn't have anything in there." *Id.*  Upon finding nothing in his anus, "they just commenced, beating [him] up, punching [him], kicking [him], throwing [him] around the room, just, they just beat [him] up." *Id.*  He testified that the entire ordeal at the Kennedy Square Apartments lasted "about 15 minutes." *Id.*

In light of this testimony, the Court cannot conclude that there was such a lack of evidence supporting the jury's award of punitive damages that its determination "could only have been the result of sheer surmise and conjecture." *Sabir*, 214 F. Supp. 2d at 237 (quotation

-7-

omitted).  For the same reasons, the Court finds that the jury did not reach a seriously erroneous result, nor was the verdict a miscarriage of justice.

Accordingly, the Court denies Defendants' motion for a judgment as a matter of law or, alternately, for a new trial on the issue of punitive damages.  Conceding that Defendants may have been prompted by good intentions, i.e., to stem the tide of drug trafficking in the Syracuse area by confronting a known drug dealer who, they believed, had just engaged in a drug sale, the Court cannot condone the course of action that they undertook which was inappropriate and unlawful.[3]  Our society – and the law – expects more from its police officers, notwithstanding the criminal character of the suspect.

### B.   Defendants' Motion for a New Trial Based on the Court's Erroneous Jury Instructions Regarding Punitive Damages

Defendants argue that the Court's jury charge regarding punitive damages was erroneous because the Court did not use the precise language articulated in *Smith v. Wade*, in which the Supreme Court held that punitive damages are available in a § 1983 action when the "defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."  461 U.S. 30, 56 (1983).  Defendants contend that, by using the language of "ill will or spite," as opposed to "motivated by evil motive or intent," the Court suggested a lesser punitive damages standard.  Defendants then boot-strap that argument to contend that the jury charge was erroneous because the instruction informed the

---

[3]  *See* Dkt. No. 102, Memorandum-Decision and Order, (holding search illegal as a matter of law).

jurors that they "may" assess punitive damages and never informed the jurors that they "should not" award such damages unless they found that Defendants' conduct was motivated by evil motive or intent or callous disregard for the federally protected rights of others.

### Standard of Review

A jury charge will be deemed erroneous "if the instruction misleads the jury as to the proper legal standard, or it does not adequately inform the jury of the law." *Luciano v. Olsten Corp.*, 110 F.3d 210, 218 (2d Cir. 1997) (citation omitted).  The court should not grant a new trial based on an erroneous jury charge unless, "taken as a whole, the jury instructions gave a misleading impression or inadequate understanding of the law." *Id.* (quotation omitted).  Thus, if the charge that the court actually gave was correct and sufficiently covered the essential issues, then the court should not disturb the jury verdict because of an error in the charge.  *See id.* (citation omitted).

### The Charge of the Court

The Court's jury charge stated, in pertinent part, that "[p]unitive damages are awarded, in the jury's discretion, to punish a defendant for extreme or outrageous conduct, or to deter or prevent a defendant and others like him from committing similar acts in the future." *See* Jury Instruction ("Jury Ins."), at 18.  The Court further instructed the jury that

> [y]ou may conclude that Mr. Wilson is entitled to an award of punitive damages against the Defendant whom you are considering if you find that this Defendant acted maliciously or wantonly.  A

> defendant acts maliciously if his conduct is prompted by ill will or
> spite toward the plaintiff.  A defendant acts wantonly if he acts in a
> reckless or callous disregard of, or indifference to, the rights of the
> plaintiff.  In order to justify an award of punitive damages, Mr.
> Wilson has the burden of proving, by a preponderance of the
> evidence, that the Defendant whom you are considering acted
> maliciously or wantonly with regard to Mr. Wilson's rights.

*See id.*

Although it is true that in *Smith* the Supreme Court stated that punitive damages are

available "when the defendant's conduct is shown to be motivated by evil motive or intent, or

when it involves reckless or callous indifference to the federally protected rights of others,"  461

U.S. at 56, Defendants' assertion that, because "the Court did not use the language of the U.S.

Supreme Court," *see* Defendants' Memorandum of Law at 5, the jury instruction was erroneous

contravenes well-established law.[4]  "Taken as a whole," the jury instruction must adequately

inform the jury of the law regarding punitive damages.  *Luciano*, 110 F.3d at 218.  Here, the

Court instructed the jury that it may award punitive damages if the Defendant whom it was

considering "acted maliciously or wantonly."  *See* Jury Ins. at 18.  The Court further explained

that a defendant acts "maliciously" if his conduct is prompted by "ill will or spite."  Contrary to

Defendants' argument, "ill will or spite" and "evil motive or intent" evince substantially the same

---

[4]  To assert that district courts are bound, in giving jury charges, by the exact and
unforgiving language of a case holding is to elevate, gratuitously so and inconsistent with well-
established federal trial practice, a legal formalism that has not been seen in American
jurisprudence in decades.  District courts have an obligation "to instruct the jury as to the law . . .
. A judge has wide discretion in doing so."  1 Kevin F. O'Malley, et al., *Federal Jury Practice
and Instructions* § 7.01 (5th ed. 2000).  The Supreme Court has recognized the court's discretion
as far back as 1933, when it noted that, "[i]n charging the jury, the trial judge is not limited to
instructions of an abstract sort."  *Quercia v. United States*, 289 U.S. 466, 469 (1933).

meaning.

In *Purgess v. Sharrock*, the Second Circuit, in considering a jury instruction regarding punitive damages in a defamation suit, noted that

> [s]omething more than the mere commission of a tort is always required for punitive damages.  There must be circumstances of aggravation or outrage, such as spite or 'malice,' or a fraudulent or evil motive on the part of the defendant, or such a conscious and deliberate disregard of the interests of others that the conduct may be called wilful or wanton.

33 F.3d 134, 143 (2d Cir. 1994) (quotation omitted).

With respect to punitive damages, the Second Circuit's remarks are instructive for two reasons.  First, they demonstrate that it is not the terminology that controls, but rather the nature of the conduct at issue.  Second, they provide further support for the common sense notion that "ill will or spite" is essentially interchangeable with "evil motive or intent."  Although lawyers are often compelled to split semantic hairs in the course of representation, the court's concern, when charging the jury, is to ensure that, "taken as a whole, the jury instruction" adequately informed the jury as to the relevant law.  The Court's instruction did just that.[5]

In any event, Defendants were given ample opportunity to object to this portion of the

---

[5]  It is noteworthy – to the extent Defendants are concerned about the exact terminology the Court used in instructing the jurors – that the jury charge tracked the language of *Smith* regarding the wanton nature of the conduct.  The Supreme Court held that punitive damages are available in a § 1983 action not only when a defendant's conduct demonstrates evil motive or intent but also "when it involves reckless or callous indifference to the federally protected rights of others."  *Smith*, 461 U.S. at 56.  As previously noted, the Court instructed the jury that it could award punitive damages in this case not only if a Defendant acted with "ill will or spite" but also if he acted "wantonly," which the Court explained was acting "in a reckless or callous disregard of, or indifference to, the rights of the plaintiff."  *See* Jury Ins. at 18.

charge.  After the Court distributed hard-copies of the jury instructions to the parties, the Court

gave each side time to review them and to object to any offensive language therein.  The parties

subsequently met in chambers and voiced objections and proposals, upon which the Court ruled.

At the charging conference, Defendants neither objected to the Court's use of "ill will or spite"

nor specifically proposed the "evil motive or intent" language they now advance as the basis for

this motion.[6]  It is well-settled that, in a civil trial, a party's failure to object to a jury instruction

before the jury retires to deliberate constitutes waiver, in which case the court reviews the

instruction for "fundamental error," meaning error that it is "'so serious and flagrant that it goes

to the very integrity of the trial.'"  *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314

F.3d 48, 61 (2d Cir. 2002) ( quotation omitted).

    As to Defendants' alternative argument that the jury charge was erroneous because the

instruction told the jurors that they "may" assess punitive damages as opposed to instructing

them that they "should not" award such damages barring a finding that Defendants acted with

evil motive or intent or callous disregard for the federal rights of others, Defendants again miss

the mark.  The use of the discretionary verb "may" accurately conveys the law with respect to

§ 1983 claims.  *See, e.g., Pappas*, 278 F. Supp. 2d at 312-13 ("Such punitive damages *may* be

---

[6]  Although Defendants submitted proposed jury instructions which did include the "evil
motive or intent" language they advocate, *see* Dkt. No. 82, this does not constitute an objection
as they contend in their reply memorandum.  *See* Defendants' Reply Memorandum of Law at 2.
An objection to a jury instruction must be timely made at trial, apprising the court of the specific
grounds for the objection, and allowing the court time to obtain sufficient information to evaluate
the objection properly.  *See Hurdle v. Bd. of Educ. for City of N.Y.,* No. 01 Civ. 4703, 2003 WL
22080721, *3 (S.D.N.Y. Sept. 9, 2003) (discussing Rule 51's timeliness requirement when
objecting to a jury charge).  Defendants' pre-trial proposed jury instructions do not provide an
adequate substitute for a timely objection predicated on specific grounds.

awarded even in the absence of actual damages . . . ." (emphasis added)).  This is consistent with the jury's discretion, upon receiving the case, to determine whether or not to award punitive damages.  *See Charts v. Nationwide Mut. Ins. Co.*, 397 F. Supp. 2d 357, 377 (D. Conn. 2005) (collecting cases).

For the above-stated reasons, the Court holds that Defendants did not demonstrate fundamental error nor does the law support a finding of fundamental error regarding the Court's punitive damages charge.  Additionally, since Defendants did not timely object to the jury instructions "ill will or spite" or "may" language prior to the jury's deliberations, they have waived these objections.  *See Fashion Boutique,* 314 F.3d at 61. (citation omitted).  As a result, the Court denies Defendants' motion for a new trial based on the Court's punitive damages jury instruction.

**2.      Defendants' Rule 59(e) Motion to Alter or Amend the Judgement Regarding the Court's Ruling That Defendants' Strip Search of Plaintiff was Illegal as a Matter of Law and the Court's Determination that Qualified Immunity Is a Question of Law**

Defendants argue that the Court erred in finding that their strip search of Plaintiff in the Kennedy Square Apartments was unconstitutional as a matter of law.  This error, Defendants assert, stems from the Court's erroneous reading of, and then reliance upon, *Knowles v. Iowa*, 525 U.S. 113 (1998), *United States v. Kelly*, 267 F. Supp. 2d 5 (D.D.C. 2003), and *Timberlake v. Benton*, 786 F. Supp. 676 (M.D. Tenn. 1992).  Defendants claim that, in relying upon these decisions, the Court articulated a rule that "a custodial arrest strip search is per se unconstitutional."  *See* Defendants' Memorandum of Law at 9.  Defendants claim that, in so

doing, the Court usurped the jury's role by not giving it the issue so that it could decide whether a "custodial arrest of the Plaintiff occurred." *See id.* Finally, Defendants argue that the Court incorrectly ruled that qualified immunity was a question of law.

### Standard of Review

Under Rule 59(e), a court has discretion to alter or amend an otherwise final judgement. *See* Fed. R. Civ. P. 59(e). Although the rule articulates neither specific grounds nor guidance for when a court should exercise this discretion, the Second Circuit had held that "district courts may alter or amend judgment 'to correct a clear error of law or prevent manifest injustice.'" *Munafo v. Metro. Transp. Auth.*, 381 F.3d 99, 105 (2d Cir. 2004) (quotation and other citations omitted).

Defendants assert that the Court committed clear error by both relying on the cases that it did and holding as it did. Courts have generally not defined what constitutes "clear error" under Rule 59(e). *See Oneida Indian Nation of N.Y. v. County of Oneida*, 214 F.R.D. 83, 98 (N.D.N.Y. 2003) (citation omitted). What can be learned from the little case law that exists on the subject, however, is that clear error should conform to a "very exacting standard." *Id.* (quoting *Hopwood v. Texas*, 236 F.3d 256, 272 (5th Cir. 2000)). Thus, the court should have "'a clear conviction of error'" before finding that a final judgement was predicated on clear error. *Id.* (quotation omitted); *see also Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1988) (stating that final judgment must be "dead wrong" to constitute clear error).

### *Search-Incident-to-Arrest Ruling*

As a threshold matter, Defendants have inaccurately characterized the Court's decision regarding the search-incident-to-arrest question.  Defendants' arguments are therefore irrelevant to the Court's determination of this issue.[7]

In its Memorandum-Decision and Order, the Court held that, "although Defendants seized Plaintiff within the meaning of the Fourth Amendment, they never formally arrested him or took him into custody."  *See* Dkt. No. 102 at 10.  As a result, Defendants did not have the search-incident-to-arrest exception available to them.  Relying on *Knowles v. Iowa*, the Court reasoned that,

> [i]n *Knowles*, an Iowa police officer stopped the defendant for speeding and, although he could have arrested him, he issued a citation instead.  After issuing the citation, and while the car was still stopped, the officer searched the vehicle and discovered marijuana and drug paraphernalia.  At that point, the police officer arrested the defendant on state drug charges.  The Iowa Supreme Court countenanced the officer's conduct, stating that he had

---

[7]  In fairness to Defendants, they filed their motion on October 4, 2005.  *See* Dkt. No. 103.  The Court's Memorandum-Decision and Order was entered on the docket on the same day.  *See* Dkt. No. 102.  During the course of the trial, in a chamber's conference, the Court, *sua sponte*, informed the parties that, based on Defendant's factual account of the events giving rise to this litigation and relevant case law, it was going to find, as a matter of law, that the strip search of Plaintiff in the Kennedy Square Apartments was unreasonable.  In crafting their argument, Defense counsel relied upon their recollection and notes of the Court's initial finding.  That said, Defendants have had ample opportunity to submit a supplemental filing to address the merits of the Court's decision.  Although Defendants filed a reply memorandum in response to Plaintiff's opposition memorandum on October 29, 2005, *see* Dkt. No. 110, they have still not addressed the actual legal basis for the Court's decision.

> conducted a "search incident to citation." The United States
> Supreme Court, however, disagreed, holding that, although the
> police officer could have arrested the defendant under Iowa law,
> the police officer's search of the defendant's car could not be
> justified as incident to an arrest because the police officer simply
> issued a citation. *See id.* at 116-17. The Court reasoned that a
> search without a formal custodial arrest did not comport with the
> rationale that permits the exception: "(1) the need to disarm the
> suspect in order to take him into custody, and (2) the need to
> preserve evidence for later use at trial." [footnote omitted] *Id.* at
> 116 (citations omitted).

> As noted, there is no dispute that, although Defendants seized
> Plaintiff within the meaning of the Fourth Amendment, they never
> formally arrested him or took him into custody. [footnote omitted]
> As a result, the Court concludes that, under the rule established in
> *Knowles*, and previously in other cases, Defendants may not rely
> upon the search-incident-to-arrest exception to justify their strip
> search of Plaintiff. *See Knowles*, 525 U.S. at 116-17; *see also
> Evans*, 43 N.Y.2d at 165; *Timberlake*, 786 F. Supp. at 688-89.

*See* Dkt. No. 102 at 9-10.

Although the Court's written decision speaks for itself, it is important to clear up any

ambiguity that Defendants perceive in that decision. First, the Court did not hold that "a

custodial arrest strip search is per se unconstitutional," and nothing in the Court's written

decision can be read to suggest such a holding. Nor did the Court make such a representation to

counsel.

Second, the issue of whether Defendants executed a formal custodial arrest is not in

dispute. Both Defendants and Plaintiff testified that, after Defendants strip-searched Plaintiff in

the Kennedy Square Apartments, they allowed him to leave. Defendants never took him to the

Onondaga County Justice Center for processing, fingerprinting, and jailing, which would have

-16-

constituted a formal custodial arrest.[8]

Against this backdrop, the Court need not address further Defendants' ill-informed mischaracterization of the basis for the Court's decision.[9]  For the above-stated reasons, the Court denies Defendants' motion to alter or amend the judgement in this regard.

### Qualified Immunity Ruling

Defendants have repeatedly claimed, both during the trial and now in their post-trial submissions, that the question of qualified immunity is one for the jury and not the Court.  *See* Defendants' Memorandum of Law at 11.  This assertion is patently wrong.

In this circuit, it is well-established that the "legal determination of whether qualified immunity attaches to a law enforcement agent's actions is 'a question of law better left for the court to decide.'" *Stephenson v. Doe,* 332 F.3d 68, 81 (2d Cir. 2003) (quoting *Warren*, 906 F.2d

---

[8] Not only did the Court conclude that Defendants did not execute a formal custodial arrest, but it also held that, even if the search-incident-to-arrest exception did apply, "[u]nder the circumstances, . . . the strip search was not contemporaneous with, or in the immediate vicinity of, Defendants' seizure of Plaintiff." *See* Dkt. No. 102 at 13.  Additionally, the Court held that, "even if Defendants' strip search of Plaintiff could meet the other requirements for the search-incident-to-arrest exception to apply, it would nonetheless fail to meet the constitutional standard of reasonableness." *Id.*

[9] Furthermore, Defendants conceded in their reply to Plaintiff's Opposition Memorandum of Law that "[h]ere, plaintiff was never arrested . . . ." *See* Defendants' Reply Memorandum of Law at 2.  In light of the fact that Defendants argue both ways when they believe it suits their purpose, the Court finds that their arguments with respect to this issue are disingenuous.

-17-

at 76); *see also Cowan v. Breen*, 352 F.3d 756, 761 (2d Cir. 2003) (same); *Kerman v. City of N.Y.*, 374 F.3d 93, 109 (2d Cir. 2004) (same); *Bolden v. Village of Monticello*, 344 F. Supp. 2d 407, 410 (S.D.N.Y. 2004) (same).  The law is clear.  The Court need not opine further on this well-settled point of law.[10]

With respect to the Court's determination that Defendants were not entitled to qualified immunity, the Court accepted Defendants' facts as true – despite Defendants' remarkable assertion that the Court "ignor[ed] and/or discredit[ed] the Defendants' evidence," *see* Defendants' Memorandum of Law at 12, in determining the legality of their conduct – and held that they violated Plaintiff's clearly established constitutional right to be free from unreasonable searches and that a reasonable person would have known that this conduct violated the Constitution.  *See Stephenson,* 332 F.3d at 76.

Accordingly, the Court denies Defendants' motion to alter or amend its judgment to the extent that it is based on the Court's finding that qualified immunity is a question of law.

3.      **Defendants' Rule 59 Motion for Mistrial Based on Plaintiff's Questioning of Sergeant Lendy About His Suspension**

In requesting a new trial, Defendants renew their motion for a mistrial, which they

---

[10]  Defendants' reliance upon *Posr v. Doherty*, 944 F.2d 91 (2d Cir. 1991), for the proposition that qualify immunity is a jury question is misplaced.  In that case, the court essentially held that a finding on the merits of an excessive force claim effectively resolved the qualified immunity question.  The Second Circuit did not hold, however, that qualified immunity was a jury question.  The Court is genuinely at a loss to understand Defendants' insistence on pursuing this argument in light of the body of Second Circuit case law on the subject.

initially made during Plaintiff's direct examination of Defendant Lendy.  The gravamen of

Defendants' argument is that, because they did not question Defendant Lendy about the

disciplining proceedings, they did not open the door on this issue; and, therefore, because

Plaintiff did question Defendant Lendy about his suspension as a result of those proceedings, the

Court should grant a new trial.

As a threshold matter, the Court precluded Plaintiff from introducing evidence of

Defendant Lendy's disciplinary proceeding in his case-in-chief because it constituted

impermissible extrinsic evidence under Rule 608(b).[11]  Under Rule 608(b), a party may not

introduce extrinsic evidence of specific instances of conduct for the purpose of attacking a

witness' credibility.  *See* Fed. R. Evid. 608(b).  The rule "prohibit[s] the introduction into

evidence of . . . disciplinary records" but does not prohibit a party's inquiry into a witness'

conduct for impeachment purposes.  *Eng v. Scully*, 146 F.R.D. 74, 78 (S.D.N.Y. 1993).  Thus,

the Court ruled that Plaintiff could not introduce the findings of the disciplinary hearing but that

he may question him about such findings if Defendants opened the door to such questioning.

Defendant Lendy opened the door through the following exchange:

> **Mr. Ofodile:** Did your actions [with respect to the strip search of
> Plaintiff,] do you believe comply with the rules and regulations
> given by the City of Syracuse Police Department?

---

[11]  Although Defendants argued that Rule 407 (proscription on the admissibility of
subsequent remedial measures) supported their motion to preclude any evidence of Defendant
Lendy's suspension, the Court did not rely on this rule as a basis for granting Defendants'
motion.  *See* Fed. R. Evid. 407.  Rather, the Court relied upon Rule 608(b) and, alternatively,
Rule 403, which provides that relevant evidence "may be excluded if its probative value is
substantially outweighed by the danger of unfair prejudice" to the adverse party.  Fed. R. Evid.
403.  Under either Rule 608(b) or Rule 403, however, the Court's ruling was subject to
Defendants' opening the door on the issue.

>**Defendant Lendy:** Yes.
>
>**Mr. Ofodile:** Mr. Lendy, you were suspended because the city said your actions weren't in compliance with the procedures pertaining to this incident; is that correct?
>
>**Mr. Rossi:** I object.  I request an opportunity to be heard on the subject of a mistrial.

*See* Wilson Trial Tr. at 179-80.

At this point, the Court excused the jury for the day and heard Defendants' argument on the merits of a mistrial.  After reviewing the colloquy between Plaintiff's counsel and Defendant Lendy, the Court apprised Defendants that, by answering "yes" to Plaintiff's counsel's question about complying with the Syracuse Police Department's rules and regulations, Defendant Lendy opened the door because his credibility was at issue and whether his testimony was believed was fundamental to this case.  The Court noted that, as a result, "the plaintiff has a right to cross examine and impeach him on that answer."  *See* Wilson Mistrial Transcript at 1.  Therefore, Defendant Lendy's answer, in light of the Syracuse Police Department's disciplining him for his conduct, put his character for truthfulness at issue.[12]  Since credibility is always relevant,

---

[12]  Defense counsel states that they understood the Court's ruling to mean that only they could open the door to questioning Defendant Lendy about his prior disciplinary proceeding. The Court did not impose any such restriction.  The evidentiary concept of "opening the door" provides the court with a basis to admit otherwise inadmissible evidence (1) where an opposing party has introduced evidence on that issue and (2) when evidence presented by an opposing party creates a false impression.  *See Murray v. Schultz*, No. 05 Civ. 0472, 2005 WL 1523504, *12 n.27 (S.D.N.Y. June 29, 2005) (citing *United States v. Rea*, 958 F.2d 1206, 1225 (2d Cir. 2002)).  When Defendant Lendy testified, in response to Plaintiff's counsel's question, that he complied with the Syracuse Police Department's rules and regulations, Plaintiff's counsel  had a right to inquire into this answer which was at odds with the disciplinary proceeding's findings.  Defendant Lendy's answer contradicted the Syracuse Police Department's finding on the matter; and, in so answering, he opened the door to Plaintiff's right to impeach his credibility on that issue.  It should be noted that extrinsic evidence was neither offered nor received in this regard.

Plaintiff's inquiry in this regard was both proper and appropriate.

As previously noted, under Rule 59, a court should only order a new trial "if the jury's verdict is egregious[,]" *Pappas,* 278 F. Supp. 2d. at 301, that is, in clear contradiction of the evidence.  In light of the evidence adduced trial, the jury's verdict was not egregious.  Moreover, even if the Court's evidentiary ruling was in error, it was harmless in light of the overwhelming evidence in this case.[13]  The Court, therefore, denies Defendants' motion for new trial based on Plaintiff's questioning of Defendant Lendy about his suspension.


**4.      Defendants' Motion to Stay Enforcement of the Judgment and Attorney's Fees Award Based on the City of Syracuse's Indemnification of Defendants**

Defendants argue that, because the City of Syracuse will indemnify them for the damages award and attorney's fees award, the Court should grant them a stay as well as waive Rule 62's supersedeas bond requirement.


***Standard of Review***

Under Rule 62(b), the court has discretion to stay a judgment's execution pending the outcome of a motion for new trial or for judgment.  *See* Fed. R. Civ. P. 62(b).  Similarly, the court has discretion to stay a judgment's execution pending the outcome of an appeal if the

---

[13]  As previously stated, the Court ruled as a matter of law that Defendants' strip search of Plaintiff was illegal.  Any testimony of Defendant Lendy as to whether the search was in violation of the Syracuse Police Department's rules and regulations was irrelevant to the Court's determination of this matter.  As a result, if the Court erred in allowing this questioning, it was harmless.

appellant has posted a supersedeas bond.  *See* Fed. R. Civ. P. 62(d).

### *Whether Defendants Are Entitled to a Waiver of Bond*[14]

Relying upon *Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n*, 636 F.2d 755, 757-758 (D.C. Cir. 1980), and *Texaco Inc. v. Pennzoil Co.*, 784 F.2d 1133 (2d Cir. 1986), Defendants assert that the Court should grant their motion for a stay and dispense with the supersedeas bond requirement because the City of Syracuse, as the actual party satisfying the judgment, is solvent; and, therefore, there is little to no risk that Plaintiff will not be compensated.  Although the cited-authority does acknowledge the Court's discretion to dispense with the bond requirement in such circumstances, Defendants do not argue that a hardship would befall them if the Court requires them to post bond.  In light of this fact, the Court has no basis upon which to depart from the clear dictates of Rule 62 that otherwise require a supersedeas bond.  Accordingly, the Court denies Defendants' motion to waive the supersedeas bond but grants their motion to stay the judgment.  As the stay concerns a monetary judgment, Defendants are entitled to a stay as a matter of right, provided that they post bond.[15]  *See Am. Mfrs. Mut. Ins. Co. v. Am. Broad.-*

---

[14]   As a threshold matter, the Court denies Defendants' motion based upon Rule 62(b) because it is now moot.

[15]   Whether a court should grant a stay under Rule 62 is dependent on four factors: (1) whether the stay proponent will likely succeed on the merits; (2) whether the stay proponent will be irreparably injured without a stay; (3) whether issuing a stay will substantially injure other interested parties; and (4) whether the public interest will be served by granting or not granting the stay.  *See Harris v. Butler*, 961 F. Supp. 61, 62 (S.D.N.Y. 1997) (citations omitted).  As another court noted, "[n]ot all parties must satisfy this test, however.  It is not applicable, for example, to parties who are seeking a stay of a monetary judgment or a declaratory judgment as to a sum of money . . . ."  *N.Y. Dep't of Envtl. Conservation v. U.S. Dep't of Energy*, No. 89 CV

(continued...)

*Paramount Theatres, Inc.,* 87 S. Ct. 1, 3 (1966) (citations omitted).

To effectuate the stay, Defendants would generally have to comply with Local Rule 67.1(a), which requires, in pertinent part, that "[a] supersedeas bond, where the judgment is for a sum of money only, shall be in the amount of the judgment plus 11% to cover interest and any damages for delay as may be awarded, plus $250 to cover costs." *See* N.D.N.Y. R. 67.1(a). Exercising its discretion, however, the Court will dispense with a strict application of the local rule and require Defendants to post bond in the amount of $50,000.

**5.      Plaintiff's Motion for Attorney's Fees Based on His Status as a Prevailing Party**

Plaintiff argues that he is entitled to reasonable attorney's fees because he prevailed on the primary issue in this case, i.e., that Defendants' strip search of him in the Kennedy Square Apartments was constitutionally unreasonable.  Moreover, Plaintiff asserts that, because his attorney has been an experienced civil rights attorney since 1994, he should be reimbursed at the Northern District's applicable hourly rate for experienced attorneys – $210.  Similarly, he requests reimbursement for the costs associated with this case.  In sum, Plaintiff asks the Court to award him attorney's fees in the amount of $68,107.50 and costs in the amount of $4,817.77.

Defendants counter that Plaintiff should be compensated at the hourly rate of $175. Moreover, Defendants challenge a number of Plaintiff's billable hours for various legal work on

---

[15](...continued)
194, 1999 WL 1034505, *2 (N.D.N.Y. Nov. 8, 1999) (citing *American Mfrs. Mut. Ins. Co.*, 87 S. Ct. at 3 (other citations omitted))

the ground that, among other things, as an experienced attorney, Plaintiff's requests are excessive. Defendants also challenge, as duplicative, Plaintiff's request for fees stemming from his counsel's pre-trial preparation for the September 2004 trial date which was ultimately adjourned and for the actual September 2005 trial date, as well as for time spent preparing a response to Defendants' summary judgement motion which Plaintiff never filed.

### Attorney's Fees Standard

Under 42 U.S.C. § 1988, a prevailing party in a civil rights case is entitled to recover reasonable attorney's fees. *See Peacock v. Schwartz*, 154 F. Supp. 2d 428, 430 (E.D.N.Y. 2001) (citations omitted). If a party "has obtained 'at least some relief on the merits of his claim,' that 'directly benefit[s] him at the time of the judgment or settlement,'" then that party has prevailed for attorney's fees purposes. *Id.* (quoting *Farrar v. Hobby*, 506 U.S. 103, 111, 113 S. Ct. 566, 121 L. Ed. 2d 494 (1992)).

When determining the reasonableness and amount of attorney's fees, the district court should determine the "lodestar amount." *See id.* The lodestar amount "is the amount of hours claimed to have been spent on the matter, multiplied by a reasonable hourly fee." *Id.* (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)). Upon determining the lodestar, the court may then adjust this amount in consideration of other factors, "the 'most critical' of which 'is the degree of success obtained.'" *Betancourt v. Giuliani*, 325 F. Supp. 2d 330, 332 (S.D.N.Y. 2004) (citing [*Hensley*, 461 U.S.] at 436, 103 S. Ct. 1933). When the plaintiff's success is limited, the court may reduce the lodestar amount within its discretion.

*See Baird v. Boies, Schiller & Flexner LLP*, 219 F. Supp. 2d 510, 519 (S.D.N.Y. 2002) (citations omitted).

In essence, the court must engage in a two-step inquiry: (1) whether the plaintiff is a prevailing party, and (2) whether the attorney's fees sought are reasonable.

### Whether Plaintiff Is a Prevailing Party

In this case, Plaintiff sought damages for events which transpired on an uninterrupted continuum. Specifically, Plaintiff sought compensatory and punitive damages for (1) unreasonable search, (2) false arrest, and (3) excessive force, in the amount of not less than $10,000,000. At the close of all of the evidence, the Court ruled that Defendants violated Plaintiff's right to be free from unreasonable searches by strip searching him in the Kennedy Square Apartments and submitted to the jury Plaintiff's claims for excessive force and false arrest. On these latter two claims, the jury found that Defendants proved, by a preponderance of the evidence, that each of them had probable cause to arrest Plaintiff and that Plaintiff did not prove, by a preponderance of the evidence, that any of the Defendants used excessive force in effecting his arrest. However, with respect to the Court's holding that Defendants acted unreasonably as a matter of law by strip searching Plaintiff, having found no actual injury, the jury assessed nominal damages against all Defendants in the amount of $1 each and awarded Plaintiff punitive damages against Defendants totaling $25,000.

Although Plaintiff did not prevail on his false arrest and excessive force claims, he did

prevail on his illegal strip search claim.  The Court's finding that Defendants violated Plaintiff's right to be free from unreasonable searches, coupled with the jury's punitive damages award, clearly establishes that Plaintiff received "some relief on the merits of his claim."[16]  *Peacock*, 154 F. Supp. 2d at 430 (quoting *Farrar*, 506 U.S. at 111).  Accordingly, the Court finds that Plaintiff is the prevailing party for purposes of awarding attorney's fees under 42 U.S.C. § 1988.


### *Whether Plaintiff's Request for Attorney's Fees and Costs Is Reasonable*

Until recently, the prevailing hourly rate in the Northern District of New York was "$175.00  for civil rights attorneys with significant experience and numerous years of practice; $125.00 for associates with four or more years of experience; $100.00 for newly admitted attorneys; and $65.00 for paralegals."  *Disorbo v. City of Schenectady*, No. 99-CV-1131, 2004 WL 115009, *2 (N.D.N.Y. Jan. 9, 2004) (citations omitted).  In *Arbor Hill*, however, Magistrate Judge Homer recommended that, in light of the prevailing rate in neighboring districts and the passage of time since the present rate structure was implemented, attorney's fees rates in this jurisdiction should be increased across the board by 20%.  *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, No. 03-CV-502, 2005 WL 670307, *6 (N.D.N.Y. Mar. 22, 2005).  Judge Mordue adopted Magistrate Judge Homer's recommendation regarding

---

[16]  The Court notes that, although Plaintiff did not succeed in obtaining compensatory damages, he did succeed in obtaining both nominal and punitive damages.  Although nominal damages are generally viewed as a "technical" victory and, accordingly, "attorney's fees and costs are usually not appropriate when a plaintiff recovers only nominal damages," *Pino v. Locascio*, 101 F. 3d 235, 239 (2d Cir. 1996), Plaintiff also received a punitive damages award totaling $25,000.  This award establishes the monetary indicia of success  that warrants an award of attorney's fees.  *See McCardle v. Haddad*, 131 F.3d 43, 54 (2d Cir. 1997) (collecting cases).

attorney's fees on September 26, 2005.  *See Arbor Hill*, No. 03-CV-502, slip op., Dkt. No. 139 (N.D.N.Y. Sept. 26, 2005).  Following on the heels of that case, Senior Judge Munson, in *DIRECTV v. Girard*, relying upon Magistrate Judge Homer's *Arbor Hill* opinion, applied the attorney's fees rates announced in that decision.  *See* No. 03 CV 645, 2005 WL 2656967, *3 (N.D.N.Y. Sept. 30, 2005).

Although Magistrate Judge Homer's well-reasoned *Arbor Hill* opinion makes a strong case for a general increase in hourly rates, the Court finds that, for civil rights cases litigated in Syracuse, the prevailing rate remains $175 an hour for attorneys with significant experience.  *See Farbotko v. Clinton County of N.Y.*, No. 04-6314-CV, slip op. at 12 (2d Cir. Jan. 30, 2006) (holding that "the court's own familiarity with the rates prevailing in the district" is a proper basis to consider when determining a reasonable hourly fee within the prevailing market rate).  Moreover, the Court is aware that attorneys in Syracuse who represent plaintiffs in such cases normally charge an hourly rate which is less than the hourly rate charged by the major law firms in other types of cases (which may be $200 or more per hour), or they agree to undertake such cases on a contingency-fee basis.

The Court also notes that, given the quality of counsel's representation throughout this litigation, ranging from missed filing deadlines to ill-prepared motions, it cannot justify awarding Plaintiff's counsel a rate in excess of $175 an hour, despite his years of experience.  This conclusion is supported by the Second Circuit's recent holding that, when a court calculates a reasonable hourly fee within the prevailing market rate, it must make "a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's

counsel." *Id.*  Although Plaintiff's counsel has significant experience,[17] his demonstrated skill level, with regard to his prosecution of this case, was less than satisfactory.  As a result, the Court finds that $175 is the appropriate hourly rate to use in calculating Plaintiff's attorney's fees award.[18]

Having established the prevailing hourly rate to apply in this case, the Court must ensure that Plaintiff's papers requesting attorney's fees specify "'the date, the hours expended, and the nature of the work done.'"  *Disorbo,* 2004 WL 115009, at *2 (quoting *New York State Association for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147 (2d Cir. 1983)).  A review of Plaintiff's attorney's fees application demonstrates that these submissions are highly specific, including dates, times, and brief statements attesting to the actual work Plaintiff's counsel performed during the relevant billing period.  The Court, therefore, finds that these submissions are sufficient under the law of this circuit.

---

[17]  Plaintiff's submissions establish that his attorney has been admitted to practice in New York State since June 1994.  His practice has focused almost exclusively on civil rights litigation since that time.  He has tried civil rights cases in both the Southern and Eastern Districts of New York and currently has two other civil rights cases docketed in the Districts of Houston and the Eastern District of Virginia.

[18]  In *Farbotko*, the Second Circuit, in considering a challenge to an attorney's fees award stemming from a case in this District, held that "a reasonable hourly rate is not itself a matter of binding precedent."  *Farbotko*, No. 04-6314-CV, at 10.  Instead, a court contemplating an attorney's fees award must determine "the prevailing market rate in the relevant community [which] requires an evaluation of evidence proffered by the parties."  *Id.* at 12.  Here, Plaintiff has offered no evidence of the prevailing market rates other than a citation to *Arbor Hill*, where, as previously noted, Magistrate Judge Homer recommended that the prevailing market rate in the Northern District be increased by 20%.  As the fee applicant, Plaintiff's citation to *Arbor Hill*, without more, does not satisfy his "burden of showing by 'satisfactory evidence – in addition to the attorney's own affidavits' – that the requested hourly rates are the prevailing market rates."  *Id.* at 13 (quoting *Blum*, 465 U.S. at 896 n.11).  Accordingly, and concomitant with the above-stated reasons, the Court finds that $175 an hour for Plaintiff's counsel's work is a reasonable rate.

As to the reasonableness of the fees requested, the principle issue is whether the Court should reduce Plaintiff's requested fees award based upon his lack of success on two of his claims.  As noted, although Plaintiff succeeded on his unreasonable search claim, on which the Court held, *sua sponte*, in his favor as a matter of law, he did not succeed on his false arrest and excessive force claims.  Moreover, although Plaintiff asked for damages in the amount of $10,000,000, he only obtained punitive damages in the amount of $25,000 and nominal damages in the amount of $4.  The Court, therefore, concludes that it must substantially reduce Plaintiff's requested fees under a lack of success rationale.  As a result, the Court reduces Plaintiff's request for attorney's fees by 40% across the board.[19]

With respect to Defendants' challenges, the Court rejects their contention that, because Plaintiff's counsel is an experienced civil rights attorney, he billed excessively for work which should have taken him, according to Defendants, less time to complete.  After reviewing the challenged entries, the Court finds that there is nothing unreasonable or exorbitant about the time Plaintiff's counsel spent on drafting his first set of interrogatories or reviewing documents and the like.[20]

As to Defendants' challenge to Plaintiff's trial preparation in 2004 as duplicative, the Court would normally reject this argument because Plaintiff's counsel should not be expected to try a case based on preparation done a year in advance.  In this case, however, the Court

---

[19]  This ruling, however, does not apply to those costs to which Plaintiff is statutorily entitled under 28 U.S.C. § 1920.

[20]  Specifically, Defendants challenge Plaintiff's entries on 1/7/03, 1/8/03, 1/9/03, 3/7/03, 3/8/03, 9/22/05, 9/24/05, 9/25/05, and 9/28/05, which total $6,742.80.

-29-

adjourned the 2004 trial date because the parties were arguing back and forth over a discovery

issue involving medical records, which should have been resolved prior to the eve of trial.[21]  The

adjournment set the trial date back an entire year.  According to Plaintiff's counsel, he spent

fifty-five hours preparing for the 2004 trial, not including travel time.  In the Court's view, given

that much of this preparation was rendered duplicative in light of Plaintiff's counsel's

preparation for the 2005 trial, this amount is excessive.  *Cf. Indep. Living Aids, Inc. v. Maxi-Aids,*

*Inc.*, 25 F. Supp. 2d 127, 133 (E.D.N.Y. 1998) (holding that, where an attorney billed for time

spent preparing for a second trial after the first one ended in a mistrial, an attorney's fees award

was inappropriate and duplicative for said hours).  The Court, therefore, disallows thirty-five

hours from this total and allows Plaintiff to recover twenty hours in compensable time.[22]

     The Court reaches a similar finding with respect to Defendants' argument that Plaintiff

should not be compensated for hours spent preparing a response to Defendants' motion for

summary judgment because he never filed his opposition.[23]  In his papers requesting attorney's

fees, however, Plaintiff notes that his counsel "[w]orked on draft memo in opposition to motion

for summary judgment, saw some cases diametrically opposed to ones [he] wanted to use to

support the argument, [and he] had decided [that he] would not oppose . . . [because he] had

---

[21]  It should be noted that, at the August 31, 2004 pre-trial conference, Plaintiff did not
timely file pre-trial submissions as the Court required.  The Court warned Plaintiff's counsel that,
if this conduct continued, it would sanction him.

[22]  Specifically, Defendants challenge Plaintiff's entries on 8/31/04, 9/1/04, 9/2/04,
9/3/04, 9/4/04, 9/5/04, and 9/6/04, which total $8,925.

[23]  Specifically, Defendants challenge Plaintiff's entries on 4/3/03, 6/18/03, 6/30/03, and
8/1/03, which total $3,412.

nothing tom (sic) oppose it with . . ."[24]  Giving Plaintiff's counsel the benefit of the doubt, assuming he did research the law to advance his client's cause, but, in so doing, he discovered unfavorable law, the Court finds that the hours billed for this research were excessive in light of the result.  According to Plaintiff's counsel, he spent twenty hours and eighteen minutes researching his summary judgment response, which he never filed.  The Court, therefore, disallows ten hours and eighteen minutes and allows Plaintiff to recover ten hours in compensable time.

In calculating the reasonableness of attorney's fees, Plaintiff's submissions indicate that he would be entitled to $48,602.60.[25]  However, reducing this amount by 40% and disallowing forty-five hours and eighteen minutes for the above-stated reasons, the Court finds that Plaintiff is entitled to $24,405.24 in attorney's fees.

Plaintiff also seeks reimbursement for the time that his counsel spent traveling in connection with this case, which totals ninety-three hours and eight minutes.[26]  In the Second

---

[24]  *See* Plaintiff's entry on 9/24/03.

[25]  This total is calculated as follows: the hours expended – 277 and 44 minutes – multiplied by the hourly rate – $175.

[26]  Defendants argue that, because Plaintiff could have found local counsel, as opposed to Mr. Ofodile, who is based in Brooklyn, his fees should be reduced.  Defendants rely upon *Int'l Travel Arrangers, Inc. v. Western Airlines, Inc.*, 623 F.2d 1255, 1276 (8th Cir. 1980), and *Watson v. Wal-Mart Stores, Inc.*, No. 4:03 CV 402, 2005 WL 1266686, *3 (N.D. Fla. May 25, 2005), for this proposition; neither case, however, is applicable or persuasive.  The *Travel Arrangers* case involved a Sherman Act claim – not a civil rights case – in which the court noted that the purpose of an attorney's fees award in the antitrust realm "is to insure that a successful plaintiff . . . does not have its treble damages recovery unduly diminished by the payment of fees to its attorneys," *Int'l Travel*, 623 F.2d at 1274 (citations omitted), a purpose that § 1983 and § 1988 do not share.  As the animating purpose of the fee-shifting statute in antitrust cases is

(continued...)

Circuit, courts "'customarily reimburse attorneys for travel time at fifty percent of their hourly rates.'" *Disorbo,* 2004 WL 115009, at *5 (quotation and other citation omitted).  Plaintiff would therefore be entitled to, without reduction, reimbursement in the amount of $8,149.50, which is the sum total of his counsel's travel time multiplied by $87.50, half of $175 hourly attorney's fees rate.[27]  Applying the across-the-board reduction of 40%, the Court reduces Plaintiff's request for fees associated with his counsel's travel time to $4,889.70.

Lastly, Plaintiff seeks reimbursement for costs associated with this case, which he asserts total $4,817.77.  Additionally, he seeks reimbursement for the cost of transporting him from jail to court.  In his bill of costs, Plaintiff states that he has a travel expense of $680 stemming from an aborted trial date and has not yet received, but seeks reimbursement for, the transportation costs related to his actual trial.  A party's travel expenses – not to be confused with an attorney's travel expenses – are generally not compensable.  *Cf. Marshall v. N.Y. Div. of State Police*, 31 F.

---

[26](...continued)

dissimilar to the animating purpose of the fee-shifting statute in a civil rights case, this authority is not persuasive.  Likewise, the *Watson* case did not involve a civil rights claim; rather, it involved a personal injury case, in which the court sat in diversity, and applied Florida's "offer of judgement" law.  Under this regime, if a plaintiff rejects a defendant's good faith offer and then he loses at trial, he must compensate the defendant for reasonable attorney's fees and costs.  Given the differences in the legal framework of these cases, the Court concludes that they do not provide any persuasive basis upon which the Court should accept Defendants' argument.  Accordingly, the Court rejects Defendants' assertion.

[27]  Defendants protest both Plaintiff's request for costs in relation to his counsel's "waiting" for an individual to accompany him on a trip to Utica, New York, in order to serve process on Ms. Lois Turner and to his counsel's travel to Upstate Correctional Facility to discuss the case with Plaintiff in person.  Although one can question both the efficiency of waiting for an escort to serve process as well counsel's  trip to Plaintiff's prison rather than relying upon a phone call, the Court finds that both of these expense are reasonable in the course of representation and, therefore, compensable.

Supp. 2d 100, 110 (N.D.N.Y. 1998) (noting that reasonable litigation costs are those "which are normally charged to fee-paying clients" (citation omitted)).  Accordingly, the Court denies, in part, Plaintiff's motion for costs as it relates to his travel expenses.  The Court, therefore, excises the $680 travel expenditure in Plaintiff's bill of costs and denies in full Plaintiff's request for the cost of transportation to and from the courthouse.

With respect to all other costs, after reviewing his detailed submission, the Court concludes that, Plaintiff would be entitled to, without a reduction, a reasonable costs award of $4,137.77, which is the total amount of costs less the non-compensable $680.  However, the Court must first distinguish those costs which Plaintiff is entitled to under 28 U.S.C. § 1920 and those which are compensable as part of an attorney's fees award under 42 U.S.C. § 1988.  Under 28 U.S.C. § 1920, Plaintiff is entitled to filing fees, the cost of serving process on witnesses and subpoenaing and deposing them, and the cost of photocopying his exhibit binders in accord with the Court's standing trial order.[28]  *See, e.g., Scheiner v. Wallace*, No. 93 CIV. 0062, 1996 WL

---

[28]     Section 1920 provides, in pertinent part, that

> any court of the United States may tax as costs the following:
>
> (1) Fees of the clerk and marshal;
>
> (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
>
> (3) Fees and disbursements for printing and witnesses;
>
> (4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
>
> (5) Docket fees under section 1923 of this title[.]

(continued...)

-33-

633219, *2 (S.D.N.Y. Nov. 1, 1996) (prevailing party entitled to recover costs of depositions and serving subpoenas absent a showing of bad faith or unnecessarily aggressive litigation conduct under 28 U.S.C. § 1920) (citations omitted).  These costs total $1,947.67.  The Court, moreover, has no discretion to apply its 40% reduction in attorney's fees and costs to these costs.

With respect to the remaining costs, $2,190.10, applying a 40% reduction, the Court reduces this amount to $1,314.06.  In total, then, Plaintiff is entitled to $3,261.73 in costs.  The Court notes, however, that Defendants argue that the Court should disallow certain costs that Plaintiff seeks because he did not provide a receipt or other proof of these expenses.[29]  The Court will therefore reserve decision regarding the hotel costs until Plaintiff provides appropriate proof. With regard to the gas and toll charges, however, the Court grants reimbursement for these expenses without needlessly saddling Plaintiff with the hardship of marshaling proof.

## IV. CONCLUSION

Accordingly, after carefully reviewing the record in this case, the parties' submissions, and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Defendants' motion for judgment as a matter of law, pursuant to Rule 50 of the Federal Rules of Civil Procedure, is **DENIED** with respect to the issue of punitive damages; and the Court further

---

[28](...continued)
28 U.S.C. § 1920.

[29]  Specifically, Defendants challenge Plaintiff's bill-of-costs entries numbered 2, 3, 5, 6, 7, 9, 10, 15, 17, 18, 19, 20, and 21, which total $1,995.82 plus a cost to be determined.

**ORDERS** that Defendants' motion for a new trial, pursuant to Rule 59 of the Federal Rules of Civil Procedure, is **DENIED** with respect to the issue of punitive damages; and the Court further

**ORDERS** that Defendants' motion to alter or amend the Court's judgment, pursuant to Rule 59 of the Federal Rules of Civil Procedure, is **DENIED** to the extent that it is based upon the Court's determination that Defendants' strip search of Plaintiff was unreasonable and that qualified immunity is a question of law for the Court to decide; and the Court further

**ORDERS** that Defendants' motion for a new trial, pursuant to Rule 59 of the Federal Rules of Civil Procedure, is **DENIED** to the extent that it is based upon Plaintiff's counsel's questioning of Defendant Lendy about his suspension; and the Court further

**ORDERS** that Plaintiff's motion for attorney's fees and costs, pursuant to 42 U.S.C. § 1988, is **GRANTED**, in the amount **$30,609**; and the Court further

**ORDERS** that Plaintiff's counsel file the invoices related to his hotel expenses within **30 days** of the date of this Order if he wants the Court to order Defendants to reimburse him for this expense; and the Court further

**ORDERS** that Plaintiff's motion for costs, pursuant to 28 U.S.C. § 1920, is **GRANTED** in the amount of **$1,947.67**; and the Court further

-35-

**ORDERS** that Defendants' motion to stay enforcement of the judgment and attorney's fees and costs award in this case, pursuant to Rule 62 of the Federal Rules of Civil Procedure, is **GRANTED**, provided that Defendants post a supersedeas bond in the amount of **$50,000**; and the Court further

**ORDERS** that Defendants are to provide the Court with written notice that they have filed the required bond; and the Court further

**ORDERS** that the stay will become effective when the Court approves the supersedeas bond; and the Court further

**ORDERS** that the Clerk of the Court amend the judgment to indicate that Plaintiff is entitled to attorney's fees and costs under 42 U.S.C. § 1988 in the amount of **$30,609** and to the costs listed in his bill of costs under 28 U.S.C. § 1920 in the amount of **$1.947.67**.

**IT IS SO ORDERED.**

**Dated:** February 24, 2006
          Syracuse, New York

_____
Frederick J. Scullin, Jr.
Chief United States District Court Judge

-36-